AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Nubia N11<br>Seizure No. 2022250600060001-0006<br>("Target Device") | Case No. '22 MJ3727 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

HSI Special Agent Francisco Bernal
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: __October 11, 2022__

*Judge's signature*

City and state: __San Diego, California__     Hon. Barbara L. Major, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### *Property to be Searched*

The following property is to be searched:

    Black Nubia N11

    Seizure No. 2022250600060001-0006

    ("Target Device")

which is currently in the possession of Homeland Security Investigations, located at 880 Front Street, Suite 3200, San Diego, California 92101.

## ATTACHMENT B

*Items To Be Seized*

Authorization to search the cellular telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 28, 2022 up to and including July 5, 2022:

a. tending to indicate efforts to import controlled substances from Mexico into the United States and/or conspiracy to commit said offense;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States and/or conspiracy to commit said offense;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States and/or conspiracy to commit said offense;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, and/or conspiracy to commit said offense, including but not limited to stash houses, load houses, pickup points, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the importation of controlled substances from Mexico into the United States and/or conspiracy to commit said offense;

which are evidence of violations of Title 21, United States Code, Section 952, 960, and 963.

# AFFIDAVIT

I, Special Agent Francisco Bernal, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s), (collectively, the "Target Device"):

    Black Nubia N11

    Seizure No. 2022250600060001-0006

    ("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Enriqueta MARTINEZ ("MARTINEZ") for importing approximately 54.74 kilograms (120.68 pounds) of methamphetamine and approximately 3.24 kilograms (7.14 pounds) of fentanyl from Mexico into the United States. The Target Device is currently in the custody of Homeland Security Investigations and located at 880 Front Street, Suite 3200, San Diego, California 92101.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since August 2007. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of

controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data,

remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States and/or conspiracy to commit said offense;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States and/or conspiracy to commit said offense;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States and/or conspiracy to commit said offense;

    d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, and/or conspiracy to commit said offense, including but not limited to stash houses, load houses, pickup points, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the importation of controlled substances from Mexico into the United States and/or conspiracy to commit said offense;

which are evidence of violations of Title 21, United States Code, Section 952, 960, and 963.

## FACTS SUPPORTING PROBABLE CAUSE

7.    On July 5, 2022, at approximately 5:01 AM, MARTINEZ, a United States citizen, applied for entry into the United States from Mexico through the Otay Mesa Port of Entry in vehicle lane number 11. MARTINEZ was the driver, sole occupant, and registered owner of a 2007 Mazda SUV (the vehicle) bearing California license plates.

8.    A Canine Enforcement Team was conducting pre-primary operations when

the Human and Narcotic Detection Dog alerted to the rear of the vehicle.

9. A Customs and Border Protection Officer ("CBPO") received two negative Customs declarations from MARTINEZ. MARTINEZ stated she was crossing the border to go to Chula Vista, California. Upon lifting the spare tire cover located in the rear cargo area, a CBPO discovered what appeared to be clear wrapped packages. MARTINEZ and the vehicle were referred to secondary for further inspection.

10. A CBPO operating the Z-Portal X-Ray machine detected anomalies in the quarter panels of the vehicle.

11. A Canine Enforcement Team was conducting secondary inspection operations when the Human and Narcotic Detection Dog alerted to the driver side rear door of the vehicle.

12. Further inspection of the vehicle resulted in the discovery of 117 packages concealed in the spare tire area, quarter panels, rear seats, and center console. Of the packages found, 114 packages had a total approximate weight of 54.74 kilograms (120.68 pounds). A sample of the substance contained within the 114 packages field tested positive for the characteristics of methamphetamine. Three packages had a total approximate weight of 3.24 kilograms (7.14 pounds). A sample of the substance contained within the three packages field tested positive for the characteristics of fentanyl.

13. MARTINEZ was placed under arrest and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

14. MARTINEZ was placed under arrest at approximately 6:29 AM. During a post-Miranda interview, MARTINEZ denied knowledge of the narcotics in the vehicle. MARTINEZ claimed ownership of the vehicle and stated that she was going to Chula Vista. MARTINEZ stated she parked the car at her boyfriend's house in Tijuana, Mexico the night before she was apprehended.

15. The Target Device was found and seized by a CBPO who was tasked to perform a secondary inspection of the vehicle and inventory all the property seized from MARTINEZ and her vehicle. During the interview, MARTINEZ was shown the Target

Device and identified the Target Device as belonging to her.

16. TECS records reflect that MARTINEZ began crossing the vehicle on or about March 31, 2022. Between March 31, 2022 and July 5, 2022, MARTINEZ crossed the vehicle into the United States approximately 25 times. Registration records reflect that the vehicle was registered to the defendant on April 11, 2022 (issuance date), which is shortly before her first crossing of the vehicle into the United States.

17. Upon application of the United States, Magistrate Judge Mitchell Dembin authorized a search warrant to search the Target Device on July 6, 2022 for the date range of June 5, 2022, up to and including July 5, 2022. *See* 22-mj-02424-MDD. The warrant was timely executed on July 8, 2022, however the Certified Forensic Agent could not acquire an extraction using the Cellebrite Universal Forensic Extraction Device (UFED) because the device was damaged in that the UFED could not attach to the Target Device's port.

18. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that MARTINEZ was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event.

19. Based on my training and experience, it is also not unusual for individuals, such as MARTINEZ, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. I believe this to be the case with MARTINEZ; that she has been involved in narcotic trafficking activity for several months leading up to her arrest on July

5, 2022. As mentioned above, based on TECS crossing records, it appears that MARTINEZ crossed the vehicle from Mexico into the United States numerous times between March 31, 2022 and July 5, 2022 (the date of her arrest). Accordingly, I request permission to search the Target Device for data beginning on February 28, 2022 (one month before MARTINEZ's first crossing of the vehicle into the United States), up to and including July 5, 2022.

## METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect the Target Device and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

23. As specified above, on July 6, 2022, United States Magistrate Judge Mitchell Dembin authorized the search of the Target Device for the period of June 5, 2022 to July 5, 2022. *See* 22-mj-02424-MDD. The CFA was unsuccessful in obtaining an extraction of the Target Device using UFED. In this application, I am requesting authorization for an additional search of the Target Device using other forensic resources, including, but not limited to, resources offered by the Regional Center Forensics Laboratory and/or manual searching. Further, in this application, I am requesting authorization for an additional search of the Target Device, based on the evidence above, from February 28, 2022, through July 5, 2022.

//
//
//
//
//
//
//
//
//

## CONCLUSION

24. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of MARTINEZ's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Francisco Bernal
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this __11th__ day of October, 2022.

_____
Honorable Barbara L. Major
United States Magistrate Judge